## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                      Case No. 2:23-cr-20013-MSN

TERRY CURTIS,

    Defendant.

**ORDER ADOPTING REPORT AND RECOMMENDATIONS (ECF NO. 53) AND DENYING DEFENDANT'S MOTION TO SUPPRESS**

Before the Court is Defendant's Motion to Suppress Evidence Derived from Illegal Search and Defendant's Statement ("Motion," ECF No. 24), to which the Government responded on June 5, 2023 (ECF No. 30). Defendant's Motion was referred to the United States Magistrate Judge for report and recommendation. (ECF No. 25.) The Chief Magistrate Judge issued his Report and Recommendation ("Report") on November 8, 2023 (ECF No. 53), to which Defendant objected (ECF No. 58). The Government subsequently filed a Notice Regarding Report and Recommendation advising that it did not object to the Report and urging the Court to adopt the Report in full. (ECF No. 61 at PageID 128.) For the reasons set forth below, Defendant's objections are **OVERRULED**, and Defendant's Motion is **DENIED**.

### BACKGROUND

On January 19, 2023, Defendant was indicted on four counts of unlawfully, knowingly, and intentionally possessing with the intent to distribute certain amounts of controlled substances in violation of 21 U.S.C. § 841(a)(1); three counts of knowingly carrying and using a firearm

during and in relation to or in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c); and three counts of knowingly possessing a firearm while having previously been convicted of a crime punishable by imprisonment for a term exceeding one year under 18 U.S.C. § 922(g)(1).  (ECF No. 1 at PageID 1–4.)  Defendant filed the Motion now before the Court on May 3, 2023, asking the Court to "suppress evidence found as a result of a search of a parcel sent to his residence via Federal Express, evidence found resulting from an anticipatory search warrant executed at his residence, and his verbal admission to detectives after he was taken into custody." (ECF No. 24 at PageID 41.)

On September 27, 2023, the Magistrate Judge conducted a hearing on Defendant's Motion at which he heard testimony from three witness—Detectives Andrew Sanford, Jaeger Zuck, and Joseph Rhoads—and reviewed video of Defendant's in-custody statement, two search warrants, and photographs of the relevant package.  (ECF No. 53 at PageID 90.)  On November 8, 2023, the Chief Magistrate Judge entered his Report recommending that Defendant's Motion be denied.  (*Id.* at PageID 90.)  Defendant objected to one of the Report's proposed findings of fact and several of the Report's conclusions of law.  (*Id.* at PageID 122–25.)  The Government did not respond substantively to Defendant's objections.  (*See* ECF No. 61.)

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59, a district court may refer a motion to suppress to a magistrate judge for the preparation of a report and recommendation.  "The magistrate judge must promptly conduct the required proceedings [and] enter on the record a recommendation for disposing of the matter, including any proposed findings of fact."  Fed. R. Crim. P. 59(b)(1).  If a party files timely objections to the recommendation, the district court must consider those objections *de novo* and "accept, reject, or modify the

recommendation." Fed. R. Crim. P. 59(b)(3). Failure to object to a magistrate judge's findings or conclusions results in waiver of those objections. Fed. R. Crim. P. 59(b)(2).

"The filing of objections to a magistrate [judge]'s report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). Therefore, objections to a magistrate judge's report must be "specific." Fed. R. Crim. P. 59(b)(2). Vague, general, or conclusory objections are improper, will not be considered by the reviewing court, and are "tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001); *see also Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("[A] general objection to a magistrate [judge]'s report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."); *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004) ("An 'objection' that does nothing more than state a disagreement with a magistrate [judge]'s suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context.") The Court need not review—under a *de novo* or any other standard—those aspects of a report and recommendation to which no objection is made. *Thomas*, 474 U.S. at 150–52.

## **FINDINGS OF FACT**

The only finding of fact to which Defendant objects is the Report's proposed finding that the arresting officers "did not threaten [Defendant] with placing his children into state custody or make promises to him that he would be released if he confessed." (ECF No. 58 at PageID 122; ECF No. 53 PageID 95.) The Chief Magistrate Judge reached that conclusion "[b]ased on the officers' credible testimony" and further noted that Defendant affirmed in his recorded statement that he felt he had been treated fairly. (ECF No. 53 at PageID 95.)

The Court credits the Chief Magistrate Judge's credibility determination, which merits deference since he heard the testimony and was accordingly in the best position to make that assessment. *See, e.g.*, *United States v. Trenell*, No. 2:22-cv-200510-JPM-atc, 2023 U.S. Dist. LEXIS 24013, at *7–8 (W.D. Tenn. Feb. 13, 2023) (collecting cases indicating the magistrate judge's credibility determinations are entitled to deference). Further, the Court has reviewed the suppression hearing transcript and finds no reason to question the Chief Magistrate Judge's determination, which is reasonable and supported in the record. Detective Sanford testified that he did not tell Defendant his children could go into state custody because they had already been picked up by a family member. Detective Rhoads stated that he did not think he made any statements to Defendant that his wife would be arrested or his children would be taken into state custody if he did not provide a statement. The Court similarly finds it significant that Defendant provides no evidence to support his claims and confirmed on video that he felt he had been treated fairly. (*See* ECF No. 53 at PageID 116.)

Following this *de novo* review, Defendant's objection is **OVERRULED** and the Report's findings of fact are **ADOPTED**.[1]

---

[1] Defendant requests at the conclusion of his objections "that this Court hold an evidentiary hearing and make findings pursuant to *United States v. Moore*, 936 F.2d 287, 289 (6th Cir. 1991)." (*See* ECF No. 58 at PageID 125.) While he asks for an "evidentiary hearing," Defendant does not state what its purpose would be; he does not claim, for example, that new evidence has come to light or that other issues have arisen that are relevant to his suppression motion. But based on its best reading of Defendant's objections, the Court construes this request to seek a new evidentiary hearing so the Court may make its own credibility determination about the officers' testimony regarding the alleged threats about Defendant's family before his recorded statement.

The Court has reviewed *de novo* the Chief Magistrate Judge's credibility determination as required by 28 U.S.C. § 636(b)(1)(C). This review does not also require the Court to rehear witnesses who appeared before the Magistrate Judge, however. *United States v. Raddatz*, 447 U.S. 667, 680 (1980). *See also United States v. Winters*, 782 F.3d 289, 295 n.1 (6th Cir. 2015) (citations omitted) (quoting *Mathews v. Weber*, 423 U.S. 261, 275 (1976) and *Raddatz*, 447 U.S. at 683) ("District judges may properly give to a magistrate judge's proposed findings such weight as merit commands and the sound discretion of the judge warrants, without being required to have the

**DISCUSSION**

As summarized by the Chief Magistrate Judge, Defendant argued that the FedEx package, the evidence from his residence, and his in-custody admission to police must be suppressed on three separate grounds. (ECF No. 53 at PageID 96.) First, he contended that Detective Sanford did not have reasonable suspicion to detain and conduct a canine sniff on the FedEx package. (*Id.*) Second, he challenged the sufficiency of the anticipatory search warrant for his residence. (*Id.*) And finally, he averred that "his recorded confession was 'obtained through coercion and threats in violation of his Fifth Amendment right against self-incrimination.'" (*Id.* at PageID 97.) In response, the Government argued that there was "reasonable suspicion to detain the package for a K-9 sniff, the 'triggering condition' was clearly described in the anticipatory search warrant, and the Defendant's confession was voluntarily given, free from threats and coercion, and not in violation of his Fifth Amendment rights." (ECF No. 30 at PageID 63.) The Chief Magistrate Judge recommended rejecting Defendant's arguments and denying his Motion. Defendant objected to those recommendations.

**I.     The FedEx Package**

In his Motion, Defendant argued that the only "suspicious" attribute of the package was the fact that it had been taped on all sides, and that this factor alone did not establish reasonable suspicion to warrant detention of the package. (ECF No. 24 at PageID 45.) Consequently, he averred that the search warrant following the canine sniff was invalid and the package's contents must be suppressed. (*Id.*)

---

evidence at issue presented to them personally."). For the sake of completeness, the Court affirms that it does not find an evidentiary hearing necessary and **DENIES** this request. The Court will consider Defendant's request for findings separately. (*See* discussion *supra* Section IV.)

The Chief Magistrate Judge conducted a thorough analysis of cases from this Circuit and others in which defendants have challenged law enforcement's assertion of reasonable suspicion when detaining packages. (*See* ECF No. 53 at PageID 100–05.) Given that case law, he concluded that "the threshold for meeting the reasonable suspicion standard, as applied to the detention of packages for the purpose of subjecting them to dog sniffs, is a low one." (*Id.* at PageID 105.) He also noted that this bar is lower than that required to conduct a *Terry* or a traffic stop, and ultimately found that the facts here indicated that reasonable suspicion existed to detain the package. (*Id.* at PageID 107–09.) Among the articulable facts supporting this conclusion were Detective Sanford's experience investigating suspicious packages, the tape along the package's seams, the package's origins in Carlsbad, California (a "source area for narcotics"), and the fact that the sender provided only a first name. (*Id.* at PageID 110–11.) Taken together, these facts created reasonable suspicion to detain the package addressed to Defendant, meaning the resulting search warrant was valid and the evidence inside the package should not be suppressed. (*Id.* at PageID 112.)

Defendant now objects to the weight the Chief Magistrate Judge gave to the articulable facts above and maintains "that the package itself did not contain any strong indicia of illegal activity that would lead to reasonable suspicion to detain the package." (ECF No. 58 at PageID 122.) He further criticizes the Report's alleged inattention to Detective Sanford's lack of investigation into various aspects of the package—*e.g.*, the identity of the addressee as well as the type of delivery address (residential or commercial) and its connection to any narcotics activity. (*Id.* at PageID 123.) Finally, he observes that the affidavit for the search warrant itself does not mention the facts on which the Chief Magistrate Judge relied. (*Id.*)

Having reviewed the analysis in the Report and the cases cited therein, the Court agrees with the proposed conclusion in the Report. Defendant's argument "that the package itself did not

contain any strong indicia of illegal activity" is true. But "strong indicia of illegal activity" is not the standard here. Probable cause is not even necessary to justify the brief detention of a package. *See United States v. Robinson*, 390 F.3d 853, 870 (6th Cir. 2004). Rather, reasonable suspicion is the proper threshold and the package bore characteristics that can, when taken together, meet such a threshold. Indeed, while not "excessive," the tape on the package nonetheless covered all of its seams. Additionally, the sender included only a first name, and the package's origin was a "source area for narcotics." All of these factors are relevant to establishing reasonable suspicion in this context. *See United States v. Alexander*, 540 F.3d 494, 501, 501 n.2 (6th Cir. 2008) (citing *United States v. Underwood*, No. 95-5441, 1996 U.S. App. LEXIS 24995, 1996 WL 536796, at *3 (6th Cir. Sept. 20, 1996)). On top of these facts, the Chief Magistrate Judge credited Detective Sanford's three years of experience to support his proposed conclusion on this issue. (ECF No. 53 at PageID 112.) This Court agrees that these considerations are sufficient to establish reasonable suspicion, but further observes that the package was sent "Priority Overnight," which is an additional factor that can contribute to finding a package suspicious when it appears to be shipped from one individual to another, which was the case here. *See, e.g.*, *United States v. Ickes*, No. 1:15-CR-00004-GNS-2, 2016 U.S. Dist. LEXIS 48867, at *4–5 (W.D. Ky. Apr. 12, 2016); *United States v. Butler*, No. 21-20235, 2021 U.S. Dist. LEXIS 145710, at *12 (E.D. Mich. Aug. 4, 2021); *United States v. Ligon*, 861 F. App'x 612, 615 n.3 (6th Cir. 2021).

Related to his objection, Defendant considers the Chief Magistrate Judge's recognition that "[t]here are innocent explanations for each of the factors that Detective Sanford described" to undercut his finding of reasonable suspicion. (ECF No. 58 at PageID 123.) But that recognition merely acknowledges that some factors which may make a package suspicious are not, on their own, indicative of illegal activity. This observation is self-evident from the factors themselves

and has been echoed by other courts. *See, e.g.*, *Butler*, U.S. Dist. LEXIS 145710, at *16 (citing *United States v. Pacheco*, 841 F.3d 384, 394 (6th Cir. 2016)).  For example, handwriting a mailing label, sealing a package's seams, and sending packages from a location that happens to be a "drug source" locale are not actions necessarily indicative of illegality.  But, taken together, they might suggest illegal conduct is afoot.

Finally, Defendant criticized the Report for "[failing] to account for the fact that Detective Sanford did not investigate whether the delivery address was a business or residence; whether the 'Courtney Simms' named as the addressee was a real person; and whether the delivery address was previously connected to narcotics activity." (ECF No. 58 at PageID 123.)  But the Chief Magistrate Judge did address these facts.  In fact, he specifically noted that Detective Sanford did not investigate the names or addresses on the package and accordingly chose not to accept his claim that the package's destination contributed to his suspicions about the package. (ECF No. 53 at PageID 111.)  Given the other factors at play, however, these issues did not affect his ultimate conclusion.  Nor do they here.

The package's aforementioned characteristics, with the addition of Detective Sanford's experience, are sufficient to establish reasonable suspicion to detain the package for a dog sniff. Accordingly, the search warrant for the package was not invalid.  Defendant's objection is **OVERRULED** and the Report's proposed conclusion of law is **ADOPTED**.

II.     **The Anticipatory Search Warrant**

Defendant argued in his Motion that the "triggering event" in the anticipatory search warrant was impermissibly vague and, as such, did not give rise to the probable cause necessary to support the search of his residence. (ECF No. 24 at PageID 47.)  The Chief Magistrate Judge concluded the triggering event, which was "acceptance inside the residence," was "explicit, clear,

8

and narrowly drawn, and that it was satisfied when the package was brought inside 3302 Spring Valley Cove." (ECF No. 53 at PageID 114.)  Accordingly, there was probable cause to support the anticipatory warrant and the evidence inside Defendant's residence should not be suppressed. (*Id.*)  Defendant objects, reiterating the same arguments that he raised in his Motion and at the suppression hearing.  (ECF No. 58 at PageID 124.)  From his view, the triggering condition was intentionally vague because law enforcement did not know who the addressee was, having not investigated.  (*Id.*)  And "[t]he Government should not be permitted to violate the Defendant's constitutional rights when little to no investigation was done before the search warrant was obtained."  (*Id.*)

      The Court agrees with the proposed conclusion in the Report.  Triggering conditions in an anticipatory search warrant must be "'explicit, clear, and narrowly drawn.'"  *United States v. Miggins*, 302 F.3d 384, 395 (6th Cir. 2002) (quoting *United States v. Ricciardelli*, 998 F.2d 8, 12 (1st Cir. 1993)).  That being said, a court should read the search warrant and its supporting documents "in a 'commonsense' fashion."  *Id.* (quoting *United States v. Gendron*, 18 F.3d 955, 966 (1st Cir. 1994)).  Here, the triggering event was "acceptance inside the residence" and did not specify who must accept it.  (ECF No. 53 at PageID 114 (citing Ex. No. 4).)  As other courts have done, this Court considers such a triggering condition permissible.  *See, e.g.*, *Miggins*, 302 F.3d at 395–96 (upholding an anticipatory search warrant after finding that the triggering event requiring "the delivery and acceptance of the package *by someone* inside the residence" was met even though the package was accepted by someone outside the residence because that person had been in the house prior to delivery) (emphasis added); *United States v. Grubbs*, 547 U.S. 90, 97 (2006) ("In this case, the occurrence of the triggering condition—successful delivery of the videotape to Grubbs' residence—would plainly establish probable cause for the search.").

Defendant's objection is **OVERRULED** and the proposed conclusion of law is **ADOPTED**.

### III. The Confession

Defendant argued that, prior to the video recording, he denied any knowledge of drug dealing but police "threatened to arrest the Defendant's wife, have his children placed into state custody, and made assurances to the Defendant that he could be released from custody if he would confess." (ECF No. 24 at PageID 49.) He asserted that he felt coerced by these tactics, which he contended were sufficient to overbear his will, and that he would not have confessed had the officers not made the threats and promises that they did. (*Id.* at PageID 50.) In support, he suggested that the Court should find it suspicious that he "repeatedly refused to confess to police for several hours [but] [t]hen, in a complete change of course . . . offered a recorded verbal confession." (*Id.*) The Chief Magistrate Judge concluded that "the officers did not threaten [Defendant] with placing his children into state custody or make promises to him that he would be released if he confessed." (ECF No. 53 at PageID 95.) As for the alleged threat involving Defendant's wife, it is unclear whether the Chief Magistrate Judge recommended finding that officers made this threat. Regardless, he observed that threatening prosecution of a family member is not "objectively coercive" if such a threat could be "lawfully executed." (*Id.* at PageID 115.) Because the narcotics were found in a common area of the house in which Defendant's wife also lived, the Report concluded that police had probable cause to detain her for investigation and any communications about her detention or potential charges was not objectively coercive. (*Id.* at PageID 115–16.) Defendant objects to the proposed finding that Defendant's confession was not coerced. He again insinuates that officers threatened Defendant concerning his wife and children

10

while at the house, though he acknowledges that "it is impossible to know what threats were made by the officers" given the lack of video footage.  (ECF No. 58 at PageID 124–35.)

As discussed, the Court has adopted the Chief Magistrate Judge's proposed finding that "the officers did not threaten [Defendant] with placing his children into state custody or make promises to him that he would be released if he confessed."  (ECF No. 53 at PageID 95.)  Furthermore, the Court agrees with the Chief Magistrate Judge's proposed finding that Defendant's statements were not coerced due to any threat to arrest Defendant's wife.  Three requirements must exist before a confession will be found involuntary due to police coercion: "(i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." *United States v. Ray*, 803 F.3d 244, 266 (6th Cir. 2015) (quoting *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999)).  The voluntariness determination also turns on the totality of the circumstances, which "include the age, education, and intelligence of the accused; whether the accused has been informed of his constitutional rights; the length of the questioning; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as the deprivation of food or sleep." *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)).

The facts presented here do not indicate involuntariness.  First, even if police threatened to arrest Defendant's wife, such threat would not be coercive because that threat "could have been lawfully executed" given her proximity to the drugs found in a common area of a home in which she lived. *See Ray*, 803 F.3d at 267 (citing *United States v. Johnson*, 351 F.3d 254, 263 (6th Cir. 2003)).  Nor do the totality of the circumstances otherwise indicate involuntariness; Defendant was 38 years old at the time of his statement and, while he does not purport to have "extensive

education or legal training," (*see* ECF No. 24 at PageID 49), there is no evidence that his intelligence was impaired or otherwise relevant to this analysis.  Defendant concedes he was informed of his rights during the recorded interview and indicates that he was not deprived of food, water, or sleep.  (*Id.*)  When asked during the recording whether he felt he had been treated fairly, he responded in the affirmative.  (*See* ECF No. 53 at PageID 95.)  There is insufficient evidence from which to determine the exact length of the interview—the recorded statement lasted just over eight minutes but Detective Rhoads said it was possible they discussed things with Defendant prior to the interview.  (*Id.* at PageID 116.)  In any event, the evidence does not indicate that its length or nature were sufficiently egregious to outweigh the other factors.

The Court therefore **OVERRULES** Defendant's objection and **ADOPTS** this proposed conclusion of law.

## IV.     Findings Pursuant to *United States v. Moore*, 936 F.2d 287, 289 (6th Cir. 1991)

Returning to Defendant's request "that this Court . . . make findings pursuant to *United States v. Moore*, 936 F.2d 287, 289 (6th Cir. 1991)," (*see* ECF No. 58 at PageID 125), the Court considers this Order to satisfy that request.  In *Moore*, the defendant filed motions to suppress evidence and an in-court identification.  936 F.2d 287, 288.  The Court overruled those motions "[b]y margin entry" and proceeded to trial on the same day.  *Id.*  After trial, Defendant requested that the Court "issue a statement of the findings of fact and conclusions of law which served as the basis upon which" one of his motions to suppress was denied.  *Id.*  The Court never did so.  *Id.*  On appeal, the Sixth Circuit held that the district court's failure to rule on the record pursuant to Fed. R. Crim. P. 12(e)[2] was an abuse of discretion and clarified that "[e]ssential findings on the record are necessary to facilitate appellate review."  *Id.* at 289.

---

[2] That provision is now Fed. R. Crim. P. 12(d).

In this Order, the Court clearly adopts those parts of the Report that are not clearly erroneous and to which no objection has been raised and reviews *de novo* the proposed findings and conclusions to which Defendant has objected. In doing so, it sets forth the findings of fact and conclusions of law which serve as the basis for its ruling on Defendant's Motion. If Defendant believes more is required to satisfy Fed. R. Crim. P. 12(d), he does not advise what that might be.

Accordingly, Defendant's request for findings is **DENIED AS MOOT**.

## **CONCLUSION**

For the reasons set forth above, Defendant's request for an evidentiary hearing is **DENIED** and his request for findings is **DENIED AS MOOT**. Defendant's objections are **OVERRULED** and the Report (ECF No. 53) is **ADOPTED**. Defendant's Motion to Suppress (ECF No. 24) is **DENIED**.

**IT IS SO ORDERED**, this 19th day of January, 2024.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE